Putnam J.
afterward drew up the opinion of the Court.* There is no doubt concerning the intention of the proprietors of the common lands in Dorchester. Whether their vote operated as a grant oi not, it is clear that they intended to appropriate the four hundred acres of land for the support of the ministry. The town of Milton was incorporated in three or four years after the vote of the oroprietors, and if they had no corporate capacity to take and hold the land before they were incorporated, they certainly bad afterwards. We find the town of Milton, immediately after they were incorporated, engaged in making partition of the land with Dorchester. They entered, claiming under the grant of the proprietors, which, although it may have been void by reason of the incapacity of the grantees to take, was yet good to show the extent and nature of the claim which was made under it.* [1] The town recognized the pious use. They claimed to hold the fee sim pie estate in conformity to the intent of the proprietors of the common land, and have continued to be seised of the same until by their own consent the parish was incorporated and became the successor of the town.
We do not question but that the town might have acquired a title by disseisin, and an exclusive adverse occupation for a period beyond the statutes of limitation. But the facts in the case will not warrant that ground of argument, which has been so strongly urged for the demandants.
The town, in their records, have spoken of the property as church land ; sometimes as ministerial land ; and -in 1807, it is *461 called ministerial or town’s land. In one sense it was the town’s land. They were seised of it, but it was a seisin for the use of the ministry.
The town has generally applied the rents directly towards the payment of the salary of the minister ; but sometimes the rents and income were paid into the town treasury. But the town were better enabled to pay the salary. It made no difference whether the very money which was received from the rents- was paid to the minister, or he was paid by other funds and the rents applied to other purposes.
And we are satisfied that this case does not come within the statute of 1754, relating to pious uses. The land was not granted to the use of the ministers, or to the poor of the church, or to the deacons. Nor was it necessary to call in the aid of that statute, for the town had a parochial corporate capacity to take and hold real estate, to enable them to carry on the work of the ministry.
There is no evidence of such a misappropriation as would have caused a forfeiture, if the land had been claimed for that reason by the donors. From the first to the last, the original pious intent has been recognized and pursued. At last, the town requested the legislature to incorporate the parish, with a provision “ that all the duties and obligations of a ministerial nature then binding on the town, should devolve and be binding on the parish.” The parish became bound to support the ministry as the town had been, and it had a right to the ministerial property to aid them. But if the demandants recover, they will take the fund and leave the duty to the parish. For the demandants claim to have the lands discharged from all obligation to appropriate the rents and income to the use of the ministry.
We think the former acts of the town are entirely contrary to their present claim. More than a century and a half has passed away since they entered into the land and took it as land that had been laid out for the use of the ministry. They did not then pretend, and they have never since declared, until the present claim, that they were seised for any other use. The parish, in virtue of the act of incorporation, has succeeded to the town in regard to all ministerial rights and duties and *462 they have by their records recognized the original intention which they declare shall be carried into effect.
We are all very clearly of opinion, that under the circumstances proved in this case, the demandants are not by law entitled to recover. They are to become nonsuit, and costs are to be recovered by the tenants.[1]

 Shaw C. J. did not sit in the cause.

 See Tyler v. Hammond, 11 Pick 193; Beach v. Sutton, 5 Vermont R. 209; ante, 367, note 1.

 See First Parish in Medford v. Medford, 21 Pick. 109; First Parish in Shrewsbury v. Smith, 14 Pick. 297.